## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

JOSE LUIS SANCHEZ-DELGADO

CRIMINAL ACTION
NO. 17-00320-1

PAPPERT, J.                                                    March 15, 2021

### MEMORANDUM

On May 16, 2018, Jose Luis Sanchez-Delgado pleaded guilty, pursuant to a written guilty plea agreement and Federal Rule of Criminal Procedure 11(c)(1)(C), to twenty-eight counts in an indictment charging him with conspiracy and controlled substance violations. He and the Government agreed to a sentencing range and represented that neither party would appeal any sentence within that range. After pleading guilty, Sanchez-Delgado sent the Court a letter stating he wanted to withdraw his plea and requesting a new lawyer. Following a hearing, the Court appointed another attorney, and Sanchez-Delgado and his new counsel proceeded to sentencing without withdrawing the plea. The Court sentenced Sanchez-Delgado within the agreed upon range on November 5, 2018.

On July 1, 2019, Sanchez-Delgado filed a *pro se* Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 raising eight claims of ineffective assistance of counsel, some against his first lawyer and others against the second. The Motion and records of the case conclusively show Sanchez-Delgado is entitled to no relief on seven of the claims, and the Court accordingly did not conduct an evidentiary hearing on those. The Court did hold an evidentiary hearing on the eighth claim on March 1, 2021.

1

Following that hearing, and after review of the record, the Court now denies the Motion in its entirety.

I

A

i

Sanchez-Delgado was the leader of separate cocaine and heroin trafficking operations.  (Resp. to Mot. 2, ECF 326.); (Gov't Sentencing Mem. 2, 4, ECF 205.)  Court-approved wire and electronic interceptions of his cell phones between January and April of 2017 captured approximately 948 calls and texts with co-conspirators evidencing conduct in furtherance of both conspiracies.  (Resp. to Mot. 2–3); (Gov't Sentencing Mem. 2–4.)  The Government also surveilled Sanchez-Delgado, and a confidential informant made several audio and video recorded controlled purchases of cocaine, crack and heroin from Sanchez-Delgado in 2016 and 2017 at Sanchez-Delgado's home.  *See* (Resp. to Mot. 5); (Gov't Sentencing Mem. 4–5.).

On June 15, 2017, the grand jury returned an Indictment with twenty-eight charges against Sanchez-Delgado.  Sanchez-Delgado pleaded not guilty at his arraignment on June 27, *see* (June 27, 2017 Minute Entry, ECF 56), but changed his plea to guilty on all charges on May 16, 2018.  (May 16, 2018 Minute Entry, ECF 159.)  Specifically, he pleaded guilty to conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 (Count 1); conspiracy to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846 (Count 2); distribution of a controlled substance within 1,000 feet of a public school in violation of 21 U.S.C. § 860(a) (Counts 3–13); possession with intent to distribute twenty-eight grams or more of crack within 1,000 feet of a public school in violation of

2

21 U.S.C. § 860(a) (Count 14); distribution of a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Counts 15–25); possession with intent to distribute twenty-eight grams or more of crack in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) (Count 26); possession with intent to distribute approximately fifty grams of cocaine within 1,000 feet of a public school in violation of 21 U.S.C. § 860(a) (Count 27); and possession with intent to distribute approximately fifty grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Count 28). *See* (Indictment 1–22, ECF 28). Multiple-count charges each represented different occasions on which Sanchez-Delgado distributed crack, heroin or cocaine. *See* (*id.* at 17–22).

Sanchez-Delgado entered his guilty plea after signing an agreement with the Government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). (Plea Agreement ¶¶ 1, 6, ECF 161.) The agreement stipulated that between twenty-five and fifty kilograms of cocaine, and 100 and 400 grams of heroin, were the subjects of the conspiracies and that Sanchez-Delgado separately distributed and possessed with intent to distribute between twenty-eight and 112 grams of crack. (*Id.* at ¶ 9(a).) Sanchez-Delgado's Sentencing Guideline range would be calculated based on those amounts pursuant to U.S.S.G. § 1B1.3. (*Id.*) It also called for a sentence of 210 to 262 months' imprisonment, eight years to a lifetime of supervised release, a fine at the Court's discretion and a $1,500 special assessment. (*Id.* at ¶ 6.) Both the Government and Sanchez-Delgado agreed not to appeal any sentence within the proposed range. (*Id.* at ¶ 11.)

ii

Sanchez-Delgado was represented by attorney Eric Dowdle, whom Sanchez-

3

Delgado had retained, at his change of plea hearing.  (May 16, 2018 Minute Entry.)
Since Sanchez-Delgado speaks Spanish, an interpreter assisted with the proceedings.
*See* (*id.*).[1]  The Court instructed Sanchez-Delgado to tell the interpreter if at any point
he did not understand what was being said during the hearing.  *See*  (May 16, 2018 Hr'g
Tr. :19–24).  Sanchez-Delgado never did so.  *See generally* (*id.*).

At the hearing, Sanchez-Delgado confirmed he discussed his charges, plea
agreement and acknowledgement of rights form with Dowdle, understood them, had no
further questions for counsel and was satisfied with his lawyer's representation.  (*Id.* at
10:12–20, 11:1–2, 16:1–3, 16:20–18:1, 46:1–4).  While Sanchez-Delgado said he never
actually received the more than twenty-five kilograms of cocaine that was the subject of
that conspiracy, s*ee* (*id.* at 38:20–39:17), he admitted he participated in a conspiracy to
distribute that amount.  (*Id.* at 40:23–41:1.)  Counsel stated he explained to Sanchez-
Delgado that not having the drugs physically in his possession did not change the
conspiracy's objective or existence.  (*Id.* at 39:10–14.).

The Court and Government reviewed, and Sanchez-Delgado acknowledged, the
factual basis for his plea and the elements the Government would have to prove beyond
a reasonable doubt to convict Sanchez-Delgado on the charges if the case went to trial.
*See* (*id.* at 26:6–41:1).  The Court also explained to Sanchez-Delgado his limited ability
to withdraw his plea or claim his rights were violated after pleading guilty and
confirmed that his decision to plead guilty was knowing, intelligent and voluntary.  *See*
(*id.* 45:11–15, 45:5–9, 46:19–21, 47:1–16).  At the end of the hearing, the Court accepted
Sanchez-Delgado's guilty plea.  *See* (*id.* at 50:7–51:4).  The Court found he understood

---

[1]  Indeed, an interpreter has facilitated all of Sanchez-Delgado's interactions with the Court.

that by pleading guilty he waived most appellate rights and could only collaterally attack his sentence under a theory of constitutionally ineffective assistance of counsel relating to his plea or plea agreement.  *See* (*id.*).

iii

On September 4, 2018, the day before Sanchez-Delgado's sentencing, the Court received a letter from him disagreeing with his guilty plea and requesting new counsel. (Sept. 5, 2018 Hr'g Tr. 4:1–14.)  In lieu of sentencing, the Court held a hearing on these issues on September 5.  (*Id.* at 3:7–4:22.)

Sanchez-Delgado explained that he was guilty but wanted his plea to reflect the amount of drugs he actually sold.  (*Id.* at 6:6–17.)  He claimed he never saw his plea agreement until September 5, even though he signed it before pleading guilty.  (*Id.* at 13:21–14:4.)  He also said he wanted Dowdle removed because the lawyer was allegedly not visiting or communicating with him and did not adequately explain the drug quantities in his plea.  (*Id.* at 8:11–18, 14:6–19.)  He asserted he would not have accepted his plea agreement had he understood the drug quantities.  (*Id.* at 9:3–5.)

The Court told Sanchez-Delgado he could always move to withdraw his guilty plea but he bore a substantial burden in such a motion given his repeated admissions of guilt, and when he pled guilty he said that he read and understood his plea agreement, signed it, discussed it with his lawyer, was satisfied with counsel's representation and agreed that between twenty-five and fifty kilograms of cocaine were within the scope of his conspiratorial activity.  (*Id.* at 6:23–7:8, 8:19–24, 9:6–15, 11:10–13:20, 14:20–25, 17:20–18:13, 18:23–19:5.)  Sanchez-Delgado was again told that because he participated in a conspiracy to distribute between twenty-five and fifty kilograms, he was

5

accountable for that amount.  (*Id*. at 12:4–9.)

Sanchez-Delgado nonetheless maintained that he wanted to withdraw his guilty plea and get a new lawyer.  (*Id*. at 22:15–23:2.)  Dowdle moved to withdraw from the case, arguing he could not ethically file a motion to withdraw the guilty plea,  (*id*. at 10:10–11:7, 23:6–18), and the Court agreed to remove him upon Sanchez-Delgado's retention of new counsel or, if he qualified for it, Court-appointed counsel.  (*Id*. at 24:14–24. 25:17–19.)  The Court told Sanchez-Delgado it would have the new lawyer consider filing a motion to withdraw his guilty plea and, if appropriate, file such a motion promptly.  (*Id*. at 25:1–7.)

On September 10, 2018, the Court allowed Dowdle to withdraw and simultaneously appointed Anthony Kyriakakis to represent Sanchez-Delgado.  *See* (Order Appointing Counsel, ECF 211).[2]  In the end, Sanchez-Delgado never sought to withdraw his guilty plea.

iv

On November 5, 2018, the Court sentenced Sanchez-Delgado in accordance with his plea agreement to 240 months' imprisonment, eight years of supervised release, a $5,000 fine and a $1,400 special assessment.  (Judgment 3–4, 7, ECF 261.)  The sentence reflected Sanchez-Delgado's conduct enumerated in Counts 1 through 14; no penalty was imposed on Counts 15 through 26 because they were lesser included offenses.  (*Id*. at 3.)  Counts 27 and 28 were dismissed at the Government's request.  *See* (Sentencing Tr. 34:1–3); (Order Dismissing Counts, ECF 259).

During the sentencing hearing Kyriakakis asked that the PSR be amended to

---

[2]     At the time, now Philadelphia Common Pleas Court Judge Kyriakakis was a member of the Court's CJA panel.

clarify that Sanchez-Delgado was "accountable for," instead of "distributed," approximately 28.27 kilograms of cocaine.  (Nov. 5, 2018 Hr'g Tr. 8:1–8.)  Counsel also requested that the document state that "[t]he government agrees that it has no evidence that Mr. Sanchez-Delgado, or his co-conspirators, actually obtained or distributed twenty-five of the 28.27 kilograms of cocaine referenced . . ." (*Id.* at 8:9–18.) The Government and Court agreed to the requested changes and the probation officer updated the PSR accordingly.  (PSR ¶ 67.)[3]  Counsel also argued that based on Sanchez-Delgado's criminal history, prior compliance with supervised release conditions, upbringing and strong family ties, a sentence at the lowest end of the agreed upon sentencing range would be appropriate.  (Nov. 5, 2018 Hr'g Tr. 16:5–20:1.)

After imposing the sentence, the Court told Sanchez-Delgado he could appeal within fourteen days, but Sanchez-Delgado never did so.  (*Id.* at 34:24–36:6.)

## B

### i

On August 19, 2019, Sanchez-Delgado filed a *pro se* Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 asserting eight claims of ineffective assistance of counsel implicating both Dowdle and Kyriakakis.  *See generally* (Mot., ECF 314).  Specifically, Sanchez-Delgado claims his lawyers were ineffective for failing to file a motion he allegedly requested to suppress evidence (Argument A); failing to move to dismiss the Indictment (Argument B); failing to investigate his case and possible defenses (Argument C); failing to file a motion to withdraw his guilty plea

---

[3]      The final PSR contains slightly different language conveying the same point.  It says "[t]he government agreed that there is no evidence that Sanchez-Delgado or his co[-]conspirators actually obtained or distributed 25 of the 28.27 kilograms of cocaine."  (PSR ¶ 67.)

(Argument D); failing to inform him of the true nature of the charges against him and erroneously advising him to plead guilty (Arguments E and F); failing to object to the PSR and argue for a lesser sentence (Argument G); and failing to appeal (Argument H). *See generally* (*id.* at 4–20).

The Government acknowledged an evidentiary hearing was necessary to address Argument H but argued all other claims should be summarily denied. *See generally* (Gov't Resp., ECF 326.) The Court subsequently appointed Sanchez-Delgado his third lawyer of the case, CJA panel member Richard Fuschino, Jr., *see* (Order Appointing Counsel, ECF 364), and held an evidentiary hearing on March 1, 2021 focused on Argument H.[4]

ii

Sanchez-Delgado declined to testify at the hearing or present any evidence in support of his claim that he asked Judge Kyriakakis to appeal his conviction and sentence. *See, e.g.* (Mar. 1, 2021 Hr'g Tr. 7:3–8, 20:8–11). For his part, Kyriakakis credibly testified that he and Sanchez-Delgado never discussed an appeal and Sanchez-Delgado never asked him to file a notice of appeal. (*Id.* at 10:12–19, 17:22–24, 18:24–19:1.) He further stated he did not believe an appeal would be fruitful or logical based on his prior conversations with Sanchez-Delgado and the circumstances of Sanchez-Delgado's case. (*Id.* at 10:20–11:9.)

Kyriakakis explained when he was first appointed he met with Sanchez-Delgado approximately half a dozen times for several hours to determine whether to file a

---

[4]     Mr. Fuschino also agreed it was appropriate to limit the scope of the hearing to Argument H. *See* (Mar. 1, 2021 Hr'g Tr. 4:24–5:21.) The Court again thanks him for his participation on the panel and his work on this case.

motion to withdraw Sanchez-Delgado's guilty plea.[5]  (*Id.* at 9:8–21.)  During these meetings, he explained that doing so was Sanchez-Delgado's decision to make and advised Sanchez-Delgado on the pros and cons of proceeding to trial versus facing sentencing under his plea agreement.  (*Id.* at 9:23–10:3.)  Sanchez-Delgado told his lawyer he was unhappy his plea agreement said he possessed over twenty-five kilograms of cocaine, and Kyriakakis "spent significant time" explaining that what affected his sentencing guidelines was the quantity of drugs that were the object of the conspiracy, not what he may have himself possessed.  (*Id.* at 15:4–23.)  Ultimately, Sanchez-Delgado decided not to try to withdraw his plea.  (*Id.* at 10:3–8.)

The fact that Sanchez-Delgado had agreed to an 11(c)(1)(C) sentencing range was significant to Kyriakakis.  (*Id.* at 10:22–11:4.)  He believed, and explained to Sanchez-Delgado, that the "C plea" provided for a much lower sentencing guideline range than what Sanchez-Delgado would face if he was convicted at trial.  (*Id.* at 13:19–23, 14:9- 11.)  Specifically, without the plea agreement, Sanchez-Delgado would have faced a guideline sentence more than 100 months higher.  (*Id.* at 13:23–14:1.)  The Government had also told Kyriakakis before sentencing that if Sanchez-Delgado ended up going to trial it would charge him in a superseding indictment with violating 18 U.S.C. § 924(c), which would have mandated a five-year sentence consecutive to any sentence imposed for other charges.  (*Id.* at 14:1–8.)  Counsel determined, and advised Sanchez-Delgado, that the likelihood of Sanchez-Delgado's conviction at trial and receipt of a less favorable sentence than under his plea deal was high.  (*Id.* at 14:13–17.)  Sanchez-Delgado never told his lawyer he was innocent.  (*Id.* at 15:24–16:9.)

---

[5]      An interpreter was present for each discussion.  (Mar. 1, 2021 Hr'g Tr. 18:21–23.)

Indeed, he "essentially accepted responsibility for a significant number of the crimes in the Indictment" in his September 4, 2018 letter to the Court. (*Id.*)

Kyriakakis concluded:

[B]ased on Mr. Sanchez-Delgado's decision not to seek to go to trial and rather to be sentenced pursuant to the C plea, it did not seem to make sense to me that he would then, after making that decision, want to file a direct appeal, which would have again been subject to an appellate waiver and would have come after the sentencing hearing where the result of the sentence, the C plea sentence, was already known to Mr. Sanchez-Delgado at the time he decided not to go to trial.

(*Id.* at 14:18–15:1.)  He said his interactions with Sanchez-Delgado gave him no reason to think Sanchez-Delgado would want to appeal his case or that appealing would make sense, given it "would have the results, if successful, of vacating his sentence and then putting him back in the position of going to trial." (*Id.* at 16:10–20.)

On cross examination, counsel said the only conversation he had with Sanchez-Delgado after he was sentenced occurred before Sanchez-Delgado left the courtroom at sentencing. (*Id.* at 17:8–13.)  He did not recall speaking with Sanchez-Delgado's family members after sentencing. (*Id.* at 17:17–21.)

## II

## A

Section 2255(a) of Title 28 of the United States Code permits a prisoner in custody sentenced by a federal court to move that court to "vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  A petitioner bears the burden of demonstrating his § 2255 motion has merit.  *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005).  Further, a petitioner "must clear a significantly higher hurdle than

would exist on direct appeal" to obtain relief. *See United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)). "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id.* (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

Pursuant to § 2255(b), a district court should grant a hearing to determine the issues in and make factual findings on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Stated otherwise, where a petitioner "alleges any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] oblig[at]ed to follow the statutory mandate to hold an evidentiary hearing." *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005). When considering a § 2255 motion, a court must "accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). In the context of Sanchez-Delgado's ineffective assistance of counsel claims, he need only "raise[] sufficient allegations" that counsel was ineffective in order to warrant a hearing. *United States v. Booth*, 432 F.3d 542, 549 (3d Cir. 2005).

B

The Sixth Amendment guarantees an accused the "right . . . to have the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. The right to counsel is the right to effective assistance of counsel, and counsel can deprive a defendant of that right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). The Supreme Court's two-part test in *Strickland* governs claims

for ineffective assistance of counsel.  "To succeed on such a claim, the petitioner must demonstrate (1) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) that the petitioner suffered prejudice as a result of the deficiency."  *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687).

With respect to *Strickland*'s first prong, to assess "whether a petitioner has demonstrated that his attorney's representation was constitutionally deficient, [courts] look to 'the facts of the particular case, viewed as of the time of counsel's conduct' . . . and evaluate whether counsel's performance 'fell below an objective standard of reasonableness' under 'prevailing professional norms.'"  *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 850 (3d Cir. 2017) (quoting *Strickland*, 466 U.S. at 688, 690).  "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances."  *Gov't of the Virgin Islands v. Vanterpool*, 767 F.3d 157, 168 (3d Cir. 2014).  There is a "strong presumption" that counsel's performance fell "within the wide range of reasonable professional assistance."  *United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020) (quoting *Strickland*, 466 U.S. at 689); *see also United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989) ("[O]nly the rare claim of ineffectiveness of counsel . . . should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance.").

As for *Strickland*'s second prong, to demonstrate prejudice the defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability

is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

A court need not address both *Strickland* prongs "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

i

When a defendant enters into a guilty plea on the advice of counsel, the test for determining the validity of that plea is whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (internal quotations and citation omitted). Since the voluntariness of a defendant's guilty plea depends on the effectiveness of his counsel, the Supreme Court has held that *Strickland*'s two-part test applies to ineffectiveness claims arising out of the plea process. *See id.* at 57. Because the Supreme Court has emphasized a "fundamental interest in the finality of guilty pleas," *id.* at 58, the prejudice prong requires a defendant to show a reasonable probability that but for counsel's errors he would not have pleaded guilty and would have proceeded to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995), *superseded by statute on other grounds, as recognized in United States v. Tuyen Quang Pham*, 587 F. App'x 6 (3d Cir. 2014). The defendant, however, must "make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial." *Id.* at 118. He must show his decision to proceed to trial "would have been rational under the

circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

ii

*Strickland*'s two-part test also applies to claims that counsel failed to file a notice of appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). When a defendant expressly asks counsel to file an appeal, counsel renders deficient performance for failing to do so even in the presence of a valid appellate waiver. *Garza v. Idaho*, 139 S. Ct. 738, 746–47 (2019). Prejudice is presumed if the defendant "otherwise would have taken" an appeal, even "with no further showing from the defendant of the merits of his underlying claims." *Id.* at 742–44 (quoting *Flores-Ortega*, 528 U.S. at 484).

When a defendant has not discussed an appeal with his lawyer, "whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking . . . whether counsel . . . consulted with the defendant about an appeal." *Flores-Ortega*, 528 U.S. at 478. If counsel has not consulted with the defendant, counsel performs deficiently if he had "a constitutionally imposed duty to consult with the defendant," which exists "when there is a reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. The Supreme Court has advised:

> In making this determination, courts must take into account all the information counsel knew or should have known. . . . Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would

14

have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id.* "To show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

### III

The Parties and the Court limited the scope of the evidentiary hearing to Argument H because this case's record conclusively shows Sanchez-Delgado is not entitled to relief on Arguments A through G.  He knowingly, intelligently and voluntarily entered into a written plea agreement, reviewed his plea and its implications several times with the Court, admitted his guilt on numerous occasions, received new counsel partially in order to withdraw his guilty plea if appropriate and then chose to proceed to sentencing where he received a sentence within the range he agreed to.

### A

In Argument A, Sanchez-Delgado states counsel was ineffective for failing "to file a requested motion to suppress evidence seized in violation of the Fourth Amendment" even though counsel was aware his Fourth Amendment rights were violated.  (Mot. at 4.).  He does not say how his Fourth Amendment rights were violated or what evidence counsel should have moved to suppress as unlawfully obtained.  *See generally* (*id.*). He has never raised this issue before, and he did not list this among the reasons he wanted new counsel at his September 5, 2018 hearing.

To satisfy *Strickland*'s prejudice prong, Sanchez-Delgado "must show that he would likely have prevailed on the suppression motion and that, having prevailed,

there is a reasonable likelihood that he would not have been convicted." *Thomas v. Varner*, 428 F.3d 491, 502 (2005). He has not done this. First, because Sanchez-Delgado does not allege any facts supporting his allegation or specify what evidence he believes should have been suppressed, he does not establish that a motion to suppress would have been meritorious. Second, the evidence against Sanchez-Delgado included multiple court-approved phone interceptions, separate Government surveillance and numerous drug purchases at his home over two years by a confidential source. Absent any allegations showing or suggesting counsel could have successfully moved to suppress the evidence supporting his charges, Sanchez-Delgado cannot show there is a reasonable likelihood the outcome of his case would have been different had counsel filed a motion to suppress.[6]

B

In Argument B, Sanchez-Delgado asserts counsel was ineffective for failing to file a motion to dismiss the Indictment because it contained multiplicitous counts. (Mot. at 5.) In his Reply, he identifies Counts 1 and 2, 3 through 13, 14, 26, 27 and 28 and 15 through 25 as multiplicitous. (Reply 2, ECF 331.)

Counts 27 and 28 were dismissed at sentencing, and the Court sentenced Sanchez-Delgado on Counts 1 through 14 only because 15 through 26 were lesser included offenses. (Judgment 3.) The only way "the result of the proceedings would have been different" if counsel objected to the Indictment would be if any of Counts 1

---

[6]     Not only has Sanchez-Delgado failed to demonstrate prejudice, "[e]ffective assistance does not demand that every possible motion be filed, but only those having a solid foundation." *United States v. Swinehart*, 617 F.2d 336, 341 (3d Cir. 1980) (finding counsel was not ineffective for failing to file a motion to suppress that lacked foundation under existing Fourth Amendment case law) (citation omitted).

through 14 are multiplicitous.  They are not.

Multiplicity is "the charging of a single offense in separate counts of an indictment."  *United States v. Kennedy*, 682 F.3d 244, 254 (3d Cir. 2012).  "A multiplicitous indictment risks subjecting a defendant to multiple sentences for the same offense, an obvious violation of the Double Jeopardy Clause's protection against cumulative punishment."  *Id.* at 255.  Whether an indictment is multiplicitous depends on "whether the legislature intended to make separately punishable the different types of conduct referred to in the various counts."  *Id.* (quoting *United States v. Stanfa*, 685 F.2d 85, 87 (3d Cir. 1982)); *see also United States v. Hodge*, 870 F.3d 184, 193–94 (3d Cir. 2017) ("The Supreme Court has noted that '[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent.'") (quoting *Ohio v. Johnson*, 467 U.S. 493, 499 (1984)).  Courts also consider "whether proof of one offense charged requires an additional fact that proof of the other does not necessitate."  *Stanfa*, 685 F.2d at 87 (citing *United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978)).

Sanchez-Delgado pleaded guilty to Counts 3 through 14 for violating 21 U.S.C. § 860(a).  Section 860(a) is the greater offense of 21 U.S.C. § 841(a)(1), and it requires finding only one additional element of 1,000-foot proximity to a school.  *See United States v. Jackson*, 443 F.3d 293, 301 (3d Cir. 2006).  The Third Circuit Court of Appeals has held that Congress intended for distinct offenses to arise under 21 U.S.C. § 841 where "the acts of possession and distribution involved discrete quantities of narcotics, and thus that the facts required to prove the two offenses differ."  *Carter*, 576 F.2d at

1064 (heroin possession properly charged separately from distribution where co-conspirator made sale and simultaneously retained separate quantity of narcotics); *see also Kennedy*, 682 F.3d at 257 (no multiplicity in 21 U.S.C. § 841(a) charges where defendant retained separate stashes of heroin differing in location, composition, purity, branding and packaging).  This logic applies to 21 U.S.C. § 860(a) violations as well given their similarity to § 841(a)(1).

Counts 3 through 14 represent different controlled substance transactions for discrete quantities of narcotics on mostly different dates:

| Count | On or About Date | Approximate Weight of a Mixture and Substance Containing a Detectable Amount of the Controlled Substance Indicated |
|---|---|---|
| Three | August 3, 2016 | 4 grams heroin; 1.21 grams cocaine |
| Four | August 9, 2016 | 8.74 grams cocaine base ("crack") |
| Five | November 22, 2016 | 2.94 grams heroin |
| Six | December 7, 2016 | 5.57 grams cocaine base ("crack") |
| Seven | December 22, 2016 | 5.81 grams cocaine base ("crack") |
| Eight | January 4, 2017 | 8 grams cocaine |
| Nine | January 4, 2017 | 9 grams cocaine |
| Ten | March 4, 2017 | 1.5 grams heroin |
| Eleven | March 24, 2017 | 2 grams cocaine |
| Twelve | April 1, 2017 | 5 grams cocaine |
| Thirteen | April 12, 2017 | 2 grams cocaine |
| Fourteen | August 17, 2016 | 28 grams cocaine base ("crack") |

*See* (Indictment 17, 19).  The facts required to prove each of these Counts differ, and they are not multiplicitous.

With respect to Counts 1 and 2, courts in this District have applied a "totality of the circumstances test" to determine whether conspiracy counts are multiplicitous.  *See, e.g., United States v. Irving*, 316 F. Supp. 3d 879, 894 (E.D. Pa. 2018); *United States v. Fumo*, No. 06-319, 2008 WL 1731911, at *3 (E.D. Pa. Apr. 10, 2008).  That test examines whether:

> (a) the 'locus criminis' of the two alleged conspiracies is the same, . . . (b) there is a significant degree of temporal overlap between the two conspiracies charged, . . . (c) there is an overlap of personnel between the two conspiracies . . . and (d) the over[t] acts charged and the role played by the defendant according to the two indictments are similar.

*United States v. Liotard*, 817 F.2d 1074, 1078 (3d Cir. 1987).

Counts 1 and 2 are not multiplicitous based on the totality of circumstances. Sanchez-Delgado was the leader of both conspiracies and operated them partially out of his home, and the conspiracies overlapped for a period because they started in February and April of 2017 and ended with Sanchez-Delgado's and co-conspirators' arrests in May of 2018. Those facts show only limited overlap between the conspiracies, however, and they are outweighed by the facts that both Counts charge Sanchez-Delgado for entirely separate drug trafficking operations involving different controlled substances, different quantities of each substance and different co-conspirators.

Because none of Counts 1 through 14 are multiplicitous, Sanchez-Delgado cannot show he was prejudiced by counsel not moving to dismiss the Indictment.

C

Sanchez-Delgado claims in Argument C that his lawyer was ineffective for failing to investigate his case and possible defenses. (Mot. at 6–7.) He mentions again that counsel failed to file a motion to dismiss the Indictment for multiplicity and states counsel should have known to investigate multiplicitous counts, but does not allege any facts to substantiate his claim. *See* (*id.*); (Reply 4.).

To show prejudice under *Strickland*, Sanchez-Delgado must demonstrate that but for counsel's inadequate investigation, there is a reasonable probability that counsel would have found favorable evidence and Sanchez-Delgado would have

19

proceeded to trial.  He must "allege with specificity what the investigation would have revealed" and how the fruits of that investigation would have caused the outcome of the proceeding to be different.  *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *accord United States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008) ("To satisfy *Strickland*'s prejudice prong, [the defendant] must show that, but for his counsel's inadequate investigation, there is a reasonable probability that counsel would have found fingerprint evidence *favorable* to his claim of innocence, thus undermining confidence in his conviction.") (emphasis added).  Sanchez-Delgado fails to allege what favorable information, if any, counsel's investigation would have revealed, or how it would have helped his case.  Notably, at Sanchez-Delgado's change of plea hearing, the Government recited the factual basis for his plea and stated if the case went to trial it would introduce evidence establishing Sanchez-Delgado operated cocaine and heroin trafficking businesses that sold controlled substances obtained from Puerto Rico in Allentown, Pennsylvania and the surrounding area and recruited others to assist him. (May 16, 2018 Hr'g Tr. 29:18–37:24.)  Sanchez-Delgado makes no argument that these facts are incomplete or otherwise inaccurate.

To the extent he intended to argue only that counsel failed to investigate the issue of multiplicity, he cannot show prejudice for the reasons already explained in Part III.B of this Memorandum.  And he does not state or suggest that he would not have pleaded guilty if the charges against him were limited to Counts 1 through 14.

## D

In Argument D, Sanchez-Delgado argues counsel was ineffective for failing to file a motion to withdraw his guilty plea where fair and just reasons existed for withdrawal.

(Mot. at 8.)  He does not identify any "fair and just" reasons or further explain this argument.

A guilty plea "may not automatically be withdrawn at the defendant's whim." *United States v. James*, 928 F.3d 247, 253 (3d Cir. 2019) (quoting *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001)).  Rather, a defendant can only withdraw a guilty plea if he can "show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  The defendant's burden to demonstrate a fair and just reason is "substantial," and "'[a] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons.'"  *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (quoting *Brown*, 250 F.3d at 815).  Sanchez-Delgado falls far short of his burden.  No record evidence suggests Sanchez-Delgado was prejudiced by counsel's failure to file a motion to withdraw his plea.

To evaluate a motion to withdraw a guilty plea, a district court must consider "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal."  *Jones*, 336 F.3d at 252.  Sanchez-Delgado has repeatedly acknowledged his guilt, including during his change of plea hearing, in a letter to the Court and at his September 5, 2018 hearing to complain about Mr. Dowdle.  The only reason he ever gave for wanting to withdraw his guilty plea was that he never actually received the twenty-five kilograms or more of cocaine that he conspired to distribute. This point is irrelevant and obviously meritless.  Both the May 16, 2018 hearing transcript and PSR make clear that Sanchez-Delgado was held accountable for twenty-five to fifty kilograms of cocaine because it was within the reasonably foreseeable scope

of his conspiracy, *not* because he actually possessed or distributed that amount of cocaine.  And the Court and counsel have made clear numerous times that this distinction had no impact on his sentence.  Any effort Sanchez-Delgado made to withdraw his guilty plea would have been precluded by the record.  Had counsel filed such a motion, there is no reasonable probability it could have been granted.

Moreover, the Court allowed Dowdle to withdraw and appointed a different lawyer so that new counsel *could* file such a motion if counsel found it appropriate.  Judge Kyriakakis reviewed the record and consulted with Sanchez-Delgado, who then decided not to try and get out of his agreement.

E

Arguments E and F are essentially the same.  *See* (Mar. 1, 2021 Hr'g Tr. 5:11–16).  Sanchez-Delgado contends counsel was ineffective because he did not tell him the "true nature of the charges" against him or the consequences he faced and erroneously advised him to plead guilty.  (Mot. at 9–15.)  Specifically, he says counsel never told him that the Government would need to prove the charges in the Indictment beyond a reasonable doubt to meet its burden of proof at trial or that the charges in the Indictment were multiplicitous.  (*Id.* at 11–12.)  And at his plea hearing, counsel "erroneously advised [him] as to the answers" regarding his understanding of his plea agreement.  (*Id.* at 12.)  He claims he did not enter his plea agreement knowingly or voluntarily, and but for counsel's errors he would have insisted on going to trial.  *See* (*id.* at 9, 12, 14).

Each of these arguments, again, were never alleged or raised to the Court when Sanchez-Delgado requested Dowdle's removal.  As the Court has already addressed, the

only aspect of his plea about which Sanchez-Delgado claimed confusion was explained to him numerous times by the Court and counsel.  The Court, Dowdle and Kyriakakis made substantial efforts to ensure Sanchez-Delgado understood the charges against him.

More directly, at his change of plea hearing Sanchez-Delgado told the Court he discussed the charges against him with Dowdle and understood them, he discussed his plea agreement with Dowdle and understood it and he was satisfied with Dowdle's representation.  *See* (May 6, 2018 Hr'g Tr. 10:12 – 11:2, 17:1–4).  He said he understood the sentencing range in his plea agreement and the maximum penalties he could face if the Court did not accept his agreement, which he discussed with his lawyer.  *See* (*id.* at 18:2–13, 43:22–44:7, 45:5–10, 46:1–4.)  He further said he understood that the Court could impose a greater or lesser sentence than the one provided in his plea agreement and that if he went to trial the Government would be required to prove its stated factual basis for his plea, his guilt and the essential elements of all crimes to which he was pleading guilty, all beyond a reasonable doubt.  *See* (*id.* at 19:3–6, 20:9–17, 25:5–29:15, 38:3–7.)  And he told the Court no one made any threats, promises or assurances to convince him to plead guilty and his decision to do so was made of his own free will.  *See* (*id.* at 46:13–21).  In sum, the record belies Sanchez-Delgado's assertions that he was inadequately advised before pleading guilty and that his plea was not knowing, intelligent and voluntary.

Sanchez-Delgado also fails to show prejudice because he provides no support for his bare allegation that he would have insisted on proceeding to trial but for counsel's advice.  *See Parry*, 64 F.3d at 118.  He does not explain how his decision to proceed to

trial would have been rational, *see Padilla*, 559 U.S. at 372, and the record shows he cannot. His guilt of the charged offenses was clear from his own omissions to the Court. And as Kyriakakis explained, he faced far worse penalties, including a potential five-year consecutive sentence under 18 U.S.C. § 924(c), if he proceeded to trial. Sanchez-Delgado's own decision not to try to withdraw his guilty plea suggests he understood going to trial would have been illogical and put him at risk of a far worse outcome.

F

Sanchez-Delgado claims in Argument G that counsel was ineffective for failing to file objections to the PSR and argue for a lesser sentence. (Mot. at 16–17.) He states again that counsel should have objected because he pleaded guilty to multiplicitous charges in the Indictment, and had counsel objected there's a reasonable probability he would have been sentenced differently. (*Id.* at 17); (Reply 9–10). For the reasons stated in Part III.B, this is incorrect.

His lawyers both objected to the PSR and/or requested corrections to the Report. Dowdle's objection prompted probation to edit the PSR before it was finalized, *see* (May 6, 2018 Hr'g Tr. 5:18–16:19, 17:6–14), and Kyriakakis requested further corrections that were incorporated into the final PSR. *See* (Nov. 5, 2018 Hr'g Tr. 8:1–9:23). Kyriakakis also argued that Sanchez-Delgado should receive a sentence of 210 months, the bottom end of the range agreed upon in the plea agreement.

IV

Finally, in Argument H Sanchez-Delgado claims he asked counsel to file an appeal after his sentencing hearing, something counsel then failed to do. (Mot. 18.) He says "counsel knew or should have known to raise obvious arguable due process issues

herein," but he does not identify any specific due process issues to which he purports to refer.  (*Id.*)

The hearing revealed this allegation to be as baseless as the others.  Again, Sanchez-Delgado refused to testify himself, not even trying to overcome sentencing counsel's credible testimony as to why there was no appeal of the conviction and sentence.  Based on the hearing, the Court finds Judge Kyriakakis and Sanchez-Delgado never in fact discussed an appeal and cannot conclude Kyriakakis was *per se* deficient for not filing a notice of appeal.  Whether or not he performed deficiently hinges on whether he had a constitutionally imposed duty to consult with Sanchez-Delgado about an appeal.  He did not.

Counsel credibly explained why he had no reason to believe Sanchez-Delgado or any rational defendant would want to appeal under the circumstances of Sanchez-Delgado's case.  *See Flores-Ortega*, 528 U.S. at 480.  As to Sanchez-Delgado, his failure to discuss an appeal with Kyriakakis, coupled with his choices to enter a plea agreement and, without even attempting to withdraw that plea, proceed with sentencing gave counsel no reasonable indication that he wanted to appeal.  To the contrary, Sanchez-Delgado's choices show he made an informed decision to accept a sentence much lower than it otherwise could have been.  And in general, no rational defendant who waived most appellate rights, had no clear basis for appeal and entered a C plea providing for a reduced sentencing range would want to appeal the sentence Sanchez-Delgado received.  Counsel assessed the pros and cons (pretty much all of which were cons) of appeal and concluded it would make no sense for Sanchez-Delgado or any defendant to want to appeal a sentence on the facts of this case.

V

When a district court denies claims in a § 2255 motion, the petitioner may only appeal "if a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1).  A certificate of appealability may issue only where a petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, reasonable jurists would not debate the Court's ruling, and Sanchez-Delgado has not made a substantial showing of a denial of a constitutional right.

An appropriate Order follows.


BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.